**B. M. DORNBLATT & ASSOCIATES, INC., Plaintiff-Appellee,**

v.

**The TOWN OF LEAKESVILLE, Defendant-Appellant.**

No. 26716

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

April 18, 1969.

Curtis Breland, Leakesville, Miss., for defendant-appellant.

Charles R. Galloway, James G. Eaton, of Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

PER CURIAM:

■ This is a suit by Dornblatt (the Engineer) against the Town of Leakesville (the Town) for resident engineer and redesign services rendered by the Engineer to the Town in connection with a large scale rejuvenation of the Town's sewage and water supply facilities. This is basically a problem of the interpretation of the intent of the parties at the time the contract was entered into and the proper construction of that contract. The Engineer sued for some $41,000 and the jury returned a verdict for $14,000. We affirm.[1]

■ The Town appeals claiming that neither the resident engineer services nor the redesign services were considered or approved by the Town Board consisting of the Mayor and Aldermen. It is axiomatic that the authority of a municipal corporation is wholly statutory and must be exercised through the Town Board. Persons dealing with such bodies are bound to know the extent and limitations of their power.[2]

■ The Town apparently also takes the position that even if these services were properly approved by the Town Board, the Town is still not liable under the contract to pay for these services. However, since the Town raises no error at the trial, this second issue is foreclosed by the jury verdict in favor of the Engineer on construction of the contract, if the contract was properly entered into by, and is binding on, the Town.

The Town and the Engineer entered into a contract for the preparation of plans to extend the Town's water and sewage facilities. At the time the contract negotiations were entered into, it is undisputed that the Town planned to construct a relatively small portion of the facilities covered by the initial plan. These limited construction plans were necessitated by a lack of available funds. What the parties had in mind at that time, as the jury presumably found (we are unenlightened by this general verdict[3]), was the construction of Mississippi Project No. 3063, in the amount of some $285,000. The contract negotiations apparently centered around a clause which the Engineer insisted must remain in the contract, providing that the services of a resident engineer would be an extra, not included in the basic fee. However, the Engineer agreed to provide a resident engineer at his expense, "for the base period of construction called for in the construction specifications and contract," in return for use of a high fee curve for determination of the Engineer's basic fee. Because the Engineer did not want to establish a precedent by removing the resident engineer clause from the contract, it was agreed that the contract would be amended by letter signed by the Engineer, and dated the same date as the contract. This was done. This same contract also provided that the Town would pay the engineer for redesign services not necessitated by the fault of the Engineer. The contract, with the amendment, was properly approved by the Town Board.

This is the provision which brought about the law suit. The initial project was never constructed but was abandoned in favor of two larger projects which greatly expanded the scope of the sewage and water rejuvenation project. The Town urges that the waiver of resident engineer fees applied to whatever was

---

1. Under Rule 18 the Court has placed this case on the Summary Calendar for disposition without oral argument. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804.

2. See e.g., Warren Cty. Port Comm'n v. Farrell Const. Co., 5 Cir., 1968, 395 F. 2d 901.

3. See John R. Brown, Federal Special Verdicts: The Doubt Eliminator, 1967, 44 F.R.D. 245, 338.

ultimately constructed. The Engineer reads the waiver restrictively and claims that it applies only to the limited construction contemplated at the time the contract was signed.

The contract was signed in September 1962. Detailed plans and specifications for Project 3063 were prepared by the Engineer and were submitted to various Federal agencies in attempts to procure Federal financing. Before construction commenced, however, it appeared that under the Accelerated Federal Works Program, a great deal more money might be available and so the scope of the project was greatly increased. In the Spring and Summer of 1964, the highest expectations of the Town were realized when Federal grants for two new projects, Mississippi 97G and Mississippi 142, were accepted by the Town and a complete extension and rejuvenation of the Town's water and sewage facilities in the amount of some $536,000 became possible and was subsequently actually constructed. One of the conditions of the Federal grant was the presence of a resident engineer and provision was made for this in the Federal funding. The Town by proper action accepted the conditions. By letter of April 7, 1964, from the Mayor to the Engineer, the Engineer was advised of the acceptance of the Federal grants and was directed to proceed to take whatever action was necessary to comply with the government requirements. "Particular reference is made to the terms and Conditions under which these Grants have been accepted by the Town of Leakesville * *

"In order to meet these requirements, you are hereby authorized to take such action as is necessary to complete the plans and specifications to meet the scope of the project as is described in the applications that are applicable to the processing of these grants by the Community Facilities Administration and the Public Health Service, with such modifications as are set forth by the plans and layouts of the sewerage system and water system previously approved by the CFA and PHS respectively; and

which modifications are indicated on the copy of a layout sheet of both the water system and the sewerage system by appropriate drafted symbols and handwritten notes placed thereon during our meeting today with Mr. Abbott."

"The Mayor and Board of Aldermen have passed a resolution at its regular meeting of even date confirming the authority for you to proceed with the completion of the plans and specifications, and to perform such other tasks as are covered with the engineering agreement to meet the requirements of these projects."

The Town, therefore, approved both the resident engineering services and the redesign services necessitated by the increased scope of the project. The redesign having been approved by the Town, the jury under proper instructions apparently found that the redesign was not necessitated by fault of the Engineer.

The remaining question is whether the resident engineer services for the larger project were to be absorbed by the Engineer. This is the problem of what the parties intended at the time the contract was entered into and at the bottom of this was an issue of fact. Both sides presented their views to the jury, and the jury evidently agreed with the position taken by the Engineer, that the waiver applied only to the smaller project never in fact constructed. The Town agrees that a project of limited scope was contemplated at the time the contract was entered into, however, they take the position that the Engineer waived the resident engineer for whatever project might ultimately be constructed. However, the amending letter refers to a base period of construction and plans and specifications. No plans and specifications were in existence at that time, but the only plans and specifications contemplated were those for Project 3063, the project of limited scope. We cannot say that the interpretation placed on the contract by the jury is erroneous as a matter of law. The Engineer deducted the resident engineer fees that would have been payable for Project

3063 from his bill and claimed reimbursement only for the excess resident services necessitated by the larger project.

The services having been properly contracted for by the Town, the jury having resolved the factual issues, and no trial error having been asserted by the Town, that is the end of it.

Affirmed.